IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEFA H. THORSON,

      Plaintiff,

vs.                                                                                                              Civ. No. 04-1162 RHS

JO ANNE B. BARNHART,
**Commissioner of the Social
Security Administration,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion") **[Doc. 14]**, filed April 12, 2005.  Plaintiff alleges a disability commencing on February 25, 2000 due to carpal tunnel, two previous surgeries on her right shoulder, herniated disc, numbness in the fingers of the right hand and poor eyesight.  (Tr.[1] at 70.)  Plaintiff contends that headaches, blurry vision and back and neck pain limit her ability to work, and that she is "always hurting . . . [and] cannot sit [and] stand for too long."  (Tr. at 70.)  In May of 2001, Plaintiff stated that her condition "ha[d] gotten worse" and that she was depressed "because [of] constantly feeling very ill."  (Tr. at 88, 93.)

    2. Plaintiff's date of birth is January 3, 1952.  (Tr. at 56.)  She completed twelfth grade and received cosmetology training.  (Tr. at 76.)  Plaintiff has worked in the past as a nurse's aide and janitor.  (Tr. at 71.)

    3. Plaintiff filed her application for disability insurance benefits and supplemental security income on January 16 or 17, 2001.  (Tr. at 56, 58.)  On December 9, 2002, the Commissioner's

---

[1]Tr. = Administrative Transcript.

Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. at 214-20.) In May 2003, the Appeals Council remanded the case to the ALJ, with directions to further evaluate Plaintiff's subjective complaints and residual functional capacity ("RFC") and obtain supplemental evidence from a Vocational Expert ("VE"). (Tr. at 238-39.) Following a hearing, the ALJ issued a decision on February 26, 2004, finding that Plaintiff "has not been disabled." (Tr. at 21.) On September 3, 2004, the Appeals Council denied Plaintiff's request for a review, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. at 8.)

4. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff alleges the following errors: (1) The ALJ's finding that Plaintiff can perform light work is contrary to the evidence; (2) The ALJ's nonexertional impairments finding is reversible error; (3) The ALJ's failure to hear testimony from a VE was error; and (4) The ALJ failed to consider evidence in his credibility determination that support Plaintiff's complaints.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; and (2) that she has an impairment or combination of impairments severe enough to limit

2

the ability to do basic work activities; and (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  At step five, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work.  See Thompson, 987 F.2d at 1487 (citations omitted); Reyes, 845 F.2d at 243.  Here, the ALJ concluded that Plaintiff was not disabled at step five, based on his finding that Plaintiff "has retained a residual functional capacity which supports light work activities."[2]  (Tr. at 19 ¶6.)

7.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence and applies the correct legal tests.  See Saiz v. Barnhart, 392 F.3d 397, 398 (10th Cir. 2004) (citing Berna v. Chater, 101 F.3d 631, 632 (10th Cir. 1996) ("We review the Commissioner's decision to determine whether it rests on substantial evidence and adheres to applicable legal standards.")).

***First and Second Alleged Errors -    The ALJ's findings regarding Plaintiff's RFC and nonexertional impairments***

8.  The ALJ concluded that Plaintiff was not disabled under the medical-vocational guidelines ("grids"), based on the premise that she retains a RFC for light work that has not been significantly eroded by nonexertional factors.  (See Tr. at 19 ¶6.)  Plaintiff argues that the ALJ's finding that she is capable of "light work with no reduction in functioning from nonexertional impairments . . . . is in direct contradiction to findings of the treating doctors, and to the findings of the doctor to whom the Social Security Administration sent [Plaintiff]."  (Plaintiff's Memorandum in Support of Motion ("Memo") at 4 **[Doc. 15]**.)

---

[2]The ALJ further found that "[n]onexertional factors have not significantly eroded that work capacity."  (Tr. at 19 ¶6.)

9. Plaintiff specifically highlights Dr. Schenck's recommendation that Plaintiff refrain from repetitive and continuous overhead work and be restricted from repetitive motion with the right wrist.[3] Plaintiff argues that the limitations and restrictions described by Dr. Schenck are nonexertional impairments that are inconsistent with a full range of light work and thus, prevented the ALJ from applying the grids in a conclusive manner.

10. The grids may not be automatically applied when a claimant has significant nonexertional impairments. Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). A limitation on the ability to reach is a nonexertional impairment. See Saiz v. Barnhart, 392 F.3d 397, 399 n.2 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1569a(a), 416.969a(a), (c)(1)(vi)). The ability to reach is "required in almost all jobs and . . . a limitation in this regard may eliminate a large number of occupations a person could otherwise do." Saiz, 392 F.3d at 400 (citing SSR 85-15, 1985 WL 56857, at *7) (internal quotation marks and other citations omitted).

11. Dr. Schenck recommended that Plaintiff "refrain from repetitive or continuous overhead work" and "be restricted from repetitive motion" involving the right hand. (Tr. at 128.) However, the ALJ accorded "limited weight" to Dr. Schenck's recommendations because they "appear to be based on the claimant's representations to the doctor and not the results of her clinical examination, which did not support her complaints, and which the doctor stated revealed evidence of symptom magnification." (Tr. at 20 ¶6.) Thus, the ALJ apparently concluded that Dr. Schenck's assessment and recommendations were inconsistent with, or unsupported by, the results of her clinical examination. While it is clearly within the ALJ's authority to reject a

---

[3]Dr. Schenck's report is based on her consultative examination of Plaintiff of August 9, 2001. (Tr. at 127.)

physician's opinion which is unsupported by the objective evidence of record, <u>Castellano</u>, 26 F.3d at 1029; <u>see</u> <u>also</u> <u>Talley v. Sullivan</u>, 908 F.2d 585 (10th Cir. 1990), such is not the case here.

  12. The ALJ correctly pointed out that Dr. Schenck noted "evidence of symptom magnification." However, nothing in the doctor's opinion indicated that her assessment and recommendations were based on magnified symptoms.[4] Indeed, Dr. Schenck reported that Plaintiff "is limited in abduction of the right shoulder [and overhead reaching] due to DJD [degenerative joint disease] at the AC [acromioclavicular] joint."[5] (Tr. at 128, 130.) Dr. Schenck also found that Plaintiff "has mild weakness in the right hand, and should be restricted from repetitive motion," (tr. at 128) explaining that Plaintiff's ability to handle objects (specifically, the repetitive use of the right wrist) was limited based on evidence of "CTS [carpal tunnel syndrome] on PE [physical examination]"[6] (tr. at 130).

  13. Thus, despite the ALJ's statement to the contrary, Dr. Schenck's conclusions appear to be based on the results of her examination, which included a review of Plaintiff's x-rays, grip strength testing, assessment of range of motion and observation of physical condition (thenar wasting). If the ALJ questioned the accuracy of, or the basis for, Dr. Schenck's findings, he should have contacted her in order to resolve those questions. Because the ALJ's rationale for

---

[4] Nor did Dr. Schenck indicate that symptom magnification prevented her from assessing Plaintiff's condition or making recommendations.

[5] Dr. Schenck noted that an "[x]-ray of the right shoulder shows some degenerative changes at the AC joint." (Tr. at 128.)

[6] Dr. Schenck observed "a slight amount of thenar [referring to the mound of the palm at the base of the thumb] wasting on the right with decreased opposition strength," and recorded Plaintiff's grip strength "on the right []as 18, 20, 20, 22, 5 lbs. [and] on the left [as] 22, 24, 26, 38, 2 lbs." (Tr. at 128.)

rejecting Dr. Schenck's findings with respect to Plaintiff's reaching and handling abilities is flawed, his conclusion that these nonexertional factors have not significantly eroded Plaintiff's residual functional capacity is not based on substantial evidence.  Accordingly, this matter should be remanded for a re-assessment of Plaintiff's nonexertional impairments.

14. Finally, Plaintiff contends that she "has a mental impairment."[7]  (Plaintiff's Memo at 8.)  The ALJ acknowledged that Plaintiff has been diagnosed and treated for mental conditions, but concluded after reviewing the records that she does not have "a significant functional problem due to her emotional condition."  (Tr. at 20 ¶6.)  Plaintiff contends that she has "submitted plenty of evidence of the symptoms of her depression, anxiety and panic disorder" (Plaintiff's Reply to Defendant's Response at 3 **[Doc. 17]**).  However, the mere presence of a mental or emotional condition does not justify a finding of a severe impairment.  The ALJ concluded that Plaintiff "has not met her burden of demonstrating . . . that she has experienced more than a minimal impact on her work related functional capacities due to any severe underlying mental disorder."  (Tr. at 20 ¶6.)  The ALJ's finding regarding Plaintiff's mental condition is based on substantial evidence and as such, does not constitute a basis for remand.

### *Fourth Alleged Error - Credibility finding*

15. Plaintiff alleges that the ALJ, in concluding that Plaintiff lacked credibility, "merely recited the negative findings . . . but failed to consider all of the positive findings that . . . support" Plaintiff's testimony.  (Plaintiff's Memo at 15.)  Specifically, Plaintiff contends that the ALJ did not consider the progression of her complaints, as well as various evidence supporting Plaintiff's

---

[7]Plaintiff does not clearly articulate an argument regarding her mental condition.  However, the Court presumes that Plaintiff is alleging that she has a mental impairment that significantly erodes her RFC.

complaints of neck and back pain.

16. The ALJ found that Plaintiff's "testimony and reports of symptoms and functional restrictions was [sic] not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility." (Tr. at 19 ¶5.) However, in explaining how he reached this finding, the ALJ twice misrepresented Dr. Schenck as finding that Plaintiff possessed "full ranges of motion of *all* upper extremity joints including her fingers . . . ." (Tr. at 19 ¶ 5 (emphasis added).) While Dr. Schenck did note full range of motion in Plaintiff's "elbows, wrists, hands and fingers,[8]" (tr. at 128) she found that "[p]assive abduction [of Plaintiff's right shoulder] was restricted to 105 degrees" and "[a]ctively, client was unable to raise her arm above horizontal" (tr. at 127-28).

17. In addition, the Court notes other perplexing discrepancies contained in the ALJ's credibility analysis. For example, in the second section of paragraph 5, the ALJ apparently refers to Dr. Schenck's report by date[9], as indicating that Plaintiff's "neck was supple." (Tr. at 19 ¶ 5.) However, while Dr. Schenck reported that "[e]xamination of [Plaintiff's] . . . cervical spine is within normal limits[,]" nowhere in her report did she refer to Plaintiff's neck as "supple."[10] (Tr. at 127.) In the last sentence of paragraph 5, the ALJ stated that "[t]he doctor [Ramage[11]] found

---

[8]Dr. Schenck did not include Plaintiff's shoulders, nor did she explicitly state that Plaintiff possessed full range of motion in "all upper extremity joints."

[9]The ALJ cited to the "examination performed on August 9, 2001." (Tr. at 19 ¶ 5.) Dr. Schenck examined Plaintiff on August 9, 2001. (See Tr. at 127.)

[10]The Court notes, however, that Dr. *Ramage* described Plaintiff's neck as "[s]upple with no lymphadenopathy." (Tr. at 162.)

[11]Although the first sentence of this section indicates that the ALJ is discussing Dr. *Schenck's* examination "performed on August 9, 2001," the last sentence specifically cites Exhibit 8F, containing Dr. *Ramage's* report of an examination performed on March 21, 2002. (Tr. at 19, 160.)

that [Plaintiff's] . . . complaints of symptoms and functional difficulties exceeded the clinical findings (Exhibit 8F [Tr. at 160])." (Tr. at 19 ¶ 5.) However, while Dr. Ramage's report contained several inexplicable and disparaging comments,[12] it did not contain this finding.

18. The Court is unable to resolve the various discrepancies contained in the ALJ's decision or determine the source of the confusion.[13] Moreover, these instances do not represent the only examples of such discrepancies.[14] In any event, the ALJ's credibility finding is based, at least in part, on an a misunderstanding of Dr. Schenck's findings, and apparent confusion between Dr. Schenck's and Dr. Ramage's reports. Moreover, it is not clear to what extent the ALJ relied on this information in reaching his credibility determination. Accordingly, this matter should be

---

[12]In the history portion of his report, Dr. Ramage stated that "[i]t is impossible to go by history in these people; you have to go by objective data. The last few years has been a maze of trying to get hooked up to the system." (Tr. at 161.) He further stated that "there are truly people who are injured and they deserve help; then, there are other people who try to jilt the system." (Id.) Dr. Ramage described the "systems review [of Plaintiff] [a]s a walk through 'Disability Park.'" (Id.) Noting that Plaintiff "has had rotator cuff surgery x 2[,]" Dr. Ramage stated that while he "hope[d] and assume[d] that those were indicated[,] . . . . [i]t is also true that patients can insist on symptoms . . . to the point in [sic] which sometimes things are done to them." (Id.) In the discussion portion of his report, Dr. Ramage opined that "[t]his is a very difficult case with potential vested interest [sic] hanging over our head [sic]." (Tr. at 163.) Dr. Ramage further "suspect[ed] . . . [that Plaintiff] will go about her merry way, trying to find some niche or nook that will provide her safe haven for disability." (Tr. at 163.)

[13]It is not clear whether the ALJ confused Dr. Ramage's and Dr. Schenck's reports, or whether typographical or other errors occurred.

[14]For example, the first two sentences of the third section of paragraph 6 of the ALJ's decision, discussing the language and comments used by the "physician in Exhibit 8F [Tr. at 160]" clearly concern Dr. Ramage's report. (Tr. at 20.) The next two sentences of that section refer to Plaintiff's report of her activities of daily living and housework. (Tr. at 20.) However, while nothing in Dr. Ramage's opinion refers to such a report, Dr. *Schenck* noted in the history portion of her report that Plaintiff "is able to do light housework . . . . [and] all of her basic ADA's [sic]." (Tr. at 127.) The ALJ's next citation does not appear until the fourth section of paragraph 6, where Plaintiff's mental health records are referenced. (See Tr. at 20 (citing exhibit 15F [Tr. at 320].)

remanded for a re-assessment of Plaintiff's credibility.[15]

*Third Alleged Error - The ALJ's failure to hear VE testimony*

19. Because this matter is remanded for a re-assessment of Plaintiff's nonexertional limitations and credibility, the Court need not address Plaintiff's allegation of error regarding the ALJ's failure to utilize VE testimony. It is not clear whether, or to what extent, a re-assessment of Plaintiff's credibility will influence the ALJ's findings with respect to the Plaintiff's RFC and/or limitations, and in turn, the decision regarding the use of VE testimony. Accordingly, the ALJ should proceed as necessary in light of any new findings.

## Conclusion

WHEREFORE,

Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. 14]** is GRANTED. This case is remanded for additional proceedings consistent with this opinion, to include:

(1) a re-assessment of Plaintiff's credibility;

(2) a re-assessment of Plaintiff's nonexertional impairments regarding reaching and handling abilities; and

(3) additional proceedings, including the use of VE testimony, as necessary.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[15]The Court does not dictate any result upon remand, nor does it mean to imply that Plaintiff's testimony is necessarily credible. The Court requires only that the ALJ's findings be sufficiently specific and supported by substantial evidence in the record.